IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| HOA DINH NGUYEN, | ) | Civil No. 3:11-cv-00360-JE |
| | ) | |
| Plaintiff, | ) | FINDINGS AND |
| | ) | RECOMMENDATION |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Sharon D. Maynard
Bennett, Hartman, Morris & Kaplan, LLP
210 SW Morrison Street, Suite 500
Portland, OR 97204

    Attorney for Plaintiff

FINDINGS AND RECOMMENDATION - 1

  S. Amanda Marshall, U.S. Attorney
  Adrian L. Brown, Asst. U.S. Attorney
  1000 S.W. 3rd Avenue, Suite 600
  Portland, OR 97204-2902

  Jeffrey R. McClain
  Social Security Administration
  Office of the General Counsel
  701 Fifth Avenue, Suite 2900, M/S 221A
  Seattle, WA 98104

    Attorneys for Defendant

JELDERKS, Magistrate Judge:

  Plaintiff Hoa Dinh Nguyen brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of a partially favorable decision of the Commissioner of Social Security (the Commissioner) that denied in part his applications for Child Disability Benefits (CDB) and Supplemental Security Income (SSI) under the Social Security Act (the Act).

  In the decision at issue, Plaintiff was found to be disabled as of November 25, 2008, and was found not to be disabled from November 7, 2005, the date of the alleged onset of his disability, until that date. Plaintiff seeks a determination that he has been disabled since the alleged date of his onset of disability.

  For the reasons set out below, the Commissioner's decision should be reversed as to the period between November 7, 2005 and November 25, 2008, and Plaintiff should be found to have been disabled within that period.

## Procedural Background

  Plaintiff filed his application for SSI benefits on November 21, 2005, and filed his application for CDB on January 17, 2006. His application for SSI was denied on February 10,

FINDINGS AND RECOMMENDATION - 2

2006, and was denied upon reconsideration on November 22, 2006. Plaintiff's application for CDB was escalated to the reconsideration level, and was also denied on November 22, 2006.

Pursuant to Plaintiff's timely request following denial of his applications on reconsideration, a hearing was held before ALJ Catherine Lazuran on June 23, 2009. In a decision dated September 29, 2009, ALJ Lazuran found that Plaintiff would not have been disabled before November 25, 2008 if he were not abusing drugs. She further found that, after his drug abuse ceased on that date, he was disabled because he lacked the functional capacity required for full-time work. That decision became the final decision of the Commissioner on January 26, 2011, when the Appeals Council denied Plaintiff's request for review.

In the present action, Plaintiff seeks review of the decision denying his request for benefits between November 7, 2005, the date of the alleged onset of his disability, and November 25, 2008.

## Disability Analysis

The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520, 416.920. Below is a summary of the five steps, which also are described in Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

Step One. The Commissioner determines whether the claimant is engaged in substantial gainful activity (SGA). A claimant engaged in such activity is not disabled. If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to evaluate the claimant's case under Step Two. 20 C.F.R. § 404.1520(b).

FINDINGS AND RECOMMENDATION - 3

<u>Step Two</u>. The Commissioner determines whether the claimant has one or more severe impairments. A claimant who does not have such an impairment is not disabled. If the claimant has a severe impairment, the Commissioner proceeds to evaluate claimant's case under Step Three. 20 C.F.R. § 404.1520(c).

<u>Step Three</u>. Disability cannot be based solely on a severe impairment; therefore, the Commissioner next determines whether the claimant's impairment "meets or equals" one of the impairments listed in the SSA regulations, 20 C.F.R. Part 404, Subpart P, Appendix 1. A claimant who has such an impairment is disabled. If the claimant's impairment does not meet or equal one listed in the regulations, the Commissioner's evaluation of the claimant's case proceeds under Step Four. 20 C.F.R. § 404.1520(d).

<u>Step Four</u>. The Commissioner determines whether the claimant is able to perform work he or she has done in the past. A claimant who can perform past relevant work is not disabled. If the claimant demonstrates he or she cannot do work performed in the past, the Commissioner's evaluation of the claimant's case proceeds under Step Five. 20 C.F.R. § 404.1520(e).

<u>Step Five</u>. The Commissioner determines whether the claimant is able to do any other work. A claimant who cannot perform other work is disabled. If the Commissioner finds that the claimant is able to do other work, the Commissioner must show that a significant number of jobs exist in the national economy that the claimant can do. The Commissioner may satisfy this burden through the testimony of a vocational expert (VE) or by reference to the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2. If the Commissioner demonstrates that a significant number of jobs exist in the national economy that the claimant can do, the claimant is not disabled. If the Commissioner does not meet this burden, the claimant is disabled. 20 C.F.R. § 404.1520(f)(1).

FINDINGS AND RECOMMENDATION - 4

At Steps One through Four, the burden of proof is on the claimant. <u>Tackett</u>, 180 F.3d at 1098. At Step Five, the burden shifts to the Commissioner to show that the claimant can perform jobs that exist in significant numbers in the national economy. <u>Id.</u>

### **Factual Background and Medical Record**

Plaintiff was born on December 15, 1987, and was 18 years old on November 7, 2005 the date of his alleged onset of disability. He has an 11th grade education, and no past relevant work experience. Plaintiff has been diagnosed with Schizophrenia, Disorganized Type, and has a history of polysubstance abuse.

Plaintiff was incarcerated in the Multnomah County Jail during the first four months of 2006.[1] During that time, Plaintiff reported that he heard voices, and requested medications. He complained of interrupted sleep, depression, and anxiety, and asked that he be given medication that would stop the voices.

A mental health assessment dated May 16, 2007 indicated that Plaintiff

> continues to experience hallucinations (voices . . . that are talking directly to him). He [feels that he is] being watched during the night . . . His insight and judgment are severely impaired. Mr. Nguyen has poor memory and concentration.

On November 25, 2008, Plaintiff was committed to the Oregon State Mental Health Division. The commitment was based on the conclusion that, because of his mental illness, he was a danger to himself and could not care for his basic needs. Plaintiff remained in a local hospital until December 18, 2008, when he was transferred to the Portland Campus of the

---

[1] From the administrative record it is not possible to determine the exact dates of Plaintiff's incarceration.

FINDINGS AND RECOMMENDATION - 5

Oregon State Hospital (POSH). Dr. Bruce Johnstone, Plaintiff's treating physician, diagnosed Plaintiff with Schizophrenia, Disorganized Type. Dr. Johnstone prescribed anti-psychotic medications, a mood stabilizer, and medication to ease the side effects of these drugs.

Upon his release from the Oregon State Hospital on July 9, 2009, Plaintiff was admitted to Independence Place (IP), a residential mental health treatment facility that attempts to teach clients to live outside of acute care psychiatric hospitals. Plaintiff lived at IP through the time of the ALJ's decision.

In a letter dated May 16, 2009, Dr. Johnstone, who had been Plaintiff's treating psychiatrist at POSH, opined that, regardless of whether or not he used illegal drugs, Plaintiff could not work. Dr. Johnstone described Plaintiff's ability to function in the workplace as follows:

> In a work setting, he would have great difficulty organizing himself to show up on time, be adequately bathed, stay focused while he was there, accept criticism from supervisors, remember and carry out instruction, or ask questions or request assistance. It is very likely he would miss many days of work per month simply due to his disorganization. I would like to note that although his poly-substance abuse certainly has not helped his ability to function, it is clear that even while clean and sober, and in a highly supportive custodial setting, Mr. Nguyen's ability to function is substantially limited by his mental illness. It may be possible in the future for him to work part-time in a very supportive and understanding environment.

As discussed below, the ALJ subsequently credited Dr. Johnstone's opinion that Plaintiff could not sustain full time employment whether or not he used illegal drugs. However, she concluded that this opinion applied only after Plaintiff began a period of sustained sobriety on November 25, 2008.

In September, 2009, Dr. Satya Chandragiri, Plaintiff's treating psychiatrist at IP, and William Harrington, the administrator of IP, signed a letter describing Plaintiff's functional

FINDINGS AND RECOMMENDATION - 6

capacity and impairments. They noted that Plaintiff had been hospitalized for psychiatric problems four times before he was committed to the Oregon State Hospital in 2008, and opined that Plaintiff's polysubstance abuse resulted from his mental illness. Dr. Chandragiri and Mr. Harrington opined that Plaintiff had been "seriously and persistently mentally ill since at least 2005." The ALJ interpreted this letter as an opinion that Plaintiff's mental illness alone had rendered him unable to work since 2005.

### ALJ's Decision

At the first step of her disability analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the date of his alleged onset of disability.

At the second step, the ALJ found that Plaintiff's psychotic disorder and drug addiction were severe impairments.

At the third step of her analysis, the ALJ found that Plaintiff's severe impairments did not meet or equal a presumptively disabling impairment set out in the "listing," 20 C.F.R. Part 404, Subpart P, Appendix 1.

In the absence of past relevant work, the ALJ proceeded to the fifth step of the disability analysis. At that step, she found that Plaintiff had not been disabled within the meaning of the Act before November 25, 2008, because he would have been able to perform jobs that existed in substantial numbers in the national economy if he had not been using drugs. She found that Plaintiff had stopped using drugs as of November 25, 2008, and was then disabled because he could not work full time even if he did not use drugs. Based upon these conclusions, the ALJ found that Plaintiff was disabled within the meaning of the Act after November 25, 2008, but not

FINDINGS AND RECOMMENDATION - 7

before that date.

The critical issue in this action is the ALJ's conclusion that, though Plaintiff's substance abuse was not material to his disability after November 25, 2008, it was material to a finding of disability before that date.

### Standard of Review

A claimant is disabled if he or she is unable "to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The initial burden of proof rests upon the claimant to establish his or her disability. Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996). The Commissioner bears the burden of developing the record. DeLorme v. Sullivan, 924 F.2d 841, 8 49 (9th Cir. 1991).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); see also Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Andrews, 53 F.3d at 1039. The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, however, even if "the evidence is susceptible to more than one rational interpretation." Andrews, 53 F.3d at 1039-40.

FINDINGS AND RECOMMENDATION - 8

**Discussion**

Plaintiff contends that the ALJ erred in concluding that he was not disabled before November 25, 2008, because he would not have been disabled before that time if he had not been using drugs. Plaintiff contends that the ALJ did not provide clear and convincing reasons for rejecting his treating physician's opinion that his impairments were disabling whether or not he used drugs, and erred in concluding that his drug use was "material" to a finding of disability before November 25, 2008.

The effect of Plaintiff's drug abuse before November 25, 2008 is significant because the Social Security Act provides that "[a]n individual shall not be considered to be disabled . . . if drug addiction or alcoholism would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C). If the ALJ finds a claimant disabled at Step 3 or Step 5 and the record includes evidence of drug or alcohol addiction, the ALJ must determine whether the claimant's addiction is a contributing factor that is "material" to the finding of disability. 20 C.F.R. § 416.935; Para v. Astrue, 481 F.3d 742, 746-47 (9th Cir. 2007). In determining whether substance abuse is a contributing factor that is material to the determination of disability, the "key factor" is whether the claimant would still be found to be disabled if he or she stopped using drugs or alcohol. 20 C.F.R. § 404.1535(b)(2). The issue is not whether the claimant used drugs or alcohol during a period of alleged disability, but whether, absent the use of such substances, the claimant meets the disability criteria. Para 481 F.3d at 747-48. Where, as here, substance abuse is an issue, the claimant bears the burden of establishing that his drug or alcohol use was not material to his disability. Id. at 748.

A careful review of the record supports only the conclusion that Plaintiff has met his

FINDINGS AND RECOMMENDATION - 9

burden of establishing that his substance abuse was not material to a finding of disability between the date of the alleged onset of his disability and November 25, 2008. As noted above, the key factor in determining whether substance abuse is material to disability is whether a claimant would be found to be disabled if the substance abuse stopped. The answer to that question here is clear, because the ALJ found that Plaintiff did not engage in substance abuse after November 25, 2008, and was disabled as of that date. The ALJ asserts that Plaintiff's condition improved when Plaintiff was not abusing drugs. However, she did not provide substantial support for her conclusion that, though Plaintiff was subsequently disabled even in the absence of substance abuse, his drug use had been material to his inability to perform full time work before he stopped using drugs. Further, the medical record does not include substantial evidence supporting the ALJ's conclusion.

In concluding that Plaintiff's drug abuse was material to a finding of disability before Plaintiff stopped working, the ALJ rejected the uncontroverted opinions of Plaintiff's treating psychiatrists that Plaintiff's Schizophrenia had so severely impaired his functioning that he could not reliably and consistently function in a workplace since the alleged onset of his disability in 2005.[2] The ALJ did not provide the support required to reject those opinions.

Because treating physicians have a greater opportunity to know and observe their patients, their opinions are given greater weight than the opinions of other physicians. Rodriguez v. Bowen, 876 F.2d 759, 761-62 (9th Cir. 1989). An ALJ must provide clear and convincing

---

[2] In November, 2006, Dr. Frank Lahman, a state agency nonexamining doctor, opined that Plaintiff had only moderate limitations in his ability to function socially and maintain concentration, persistence, or pace, and was capable of understanding, remembering, and carrying out simple instructions. However, the opinion of a nonexamining physician does not constitute substantial evidence contradicting the opinion of a treating or examining physician. E.g., Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995). Dr. Lahman's opinion therefore did not "controvert" the opinions of Plaintiff's treating physicians, as that term is understood in the context of Social Security jurisprudence.

reasons for rejecting a treating physician's uncontroverted opinions. Lester v. Chater, 81 F.2d 821, 830-31 (9th Cir. 1995)

Dr. Johnstone opined that Plaintiff's psychotic impairments prevented Plaintiff from working whether or not he used illegal substances. The ALJ accepted Dr. Johnstone's opinion as to the period after Plaintiff's drug abuse had stopped, but did not apply it to the period before that time. Dr. Johnstone's opinion clearly applied both to periods during which Plaintiff was using illegal drugs and periods of sobriety. However, the ALJ provided no reasons for accepting it as to only the period during which Plaintiff did not use drugs.

The Commissioner now contends that the ALJ could infer that Dr. Johnstone's opinion applied only to periods of sobriety because Dr. Johnstone did not explicitly refer to Plaintiff's condition before he began treating him. This argument fails, because Dr. Johnstone explicitly referred to Plaintiff's condition while using drugs and explicitly opined that Plaintiff's mental impairments precluded successful full-time employment whether or not Plaintiff was using drugs. The ALJ provided no reasons, much less clear and convincing reasons, for applying Dr. Johnstone's uncontroverted opinion that Plaintiff's mental impairments were of disabling severity with or without substance abuse only to periods of sobriety.

The ALJ likewise failed to provide clear and convincing reasons for rejecting Dr. Chandragiri's opinion that Plaintiff had been "seriously and persistently mentally ill since at least 2005" and had been unable to work since that time. This opinion, set out in a letter signed by Dr. Chandragiri and William Harrington, the administrator of IP, applied equally to periods during which Plaintiff engaged in substance abuse and periods of sobriety. The ALJ interpreted the letter as an opinion that Plaintiff had been unable to work since 2005 because of mental illness alone and rejected that opinion.

FINDINGS AND RECOMMENDATION - 11

The ALJ largely ignored Dr. Chandragiri's responsibility for the opinions set out in the letter. Though the letter was co-signed, the ALJ characterized it as having been written by Harrington, whom she noted was not an "acceptable medical source under the Social Security Administration's regulations . . . ." The ALJ added that Harrington "claimed" that the letter was co-written by Dr. Chandragiri. She concluded that Harrington "and possibly the psychiatrist," were merely "speculating as to [claimant's] condition prior to July 2009 . . . ."

There is no basis for concluding that the letter did not reflect the opinion of Dr. Chandragiri, who as a treating psychiatrist was an "acceptable medical source" qualified to make medical diagnoses. See 20 C.F.R. §§ 404.1513, 416.1913. The Commissioner now acknowledges that "the standards for evaluating an acceptable medical source apply for the purposes of reviewing the ALJ's reasoning for rejecting this opinion," and contends that the ALJ provided the required "specific, legitimate, clear and convincing reasons" for rejecting Dr. Chandragiri's opinions.

This contention fails. The ALJ rejected what she implied were Harrington's opinions alone on the grounds that they were not supported by accompanying treatment records, and because Harrington did not treat Plaintiff, was not "fully familiar" with Plaintiff's drug use and improvement during periods of sobriety, did not provide a meaningful analysis of Plaintiff's drug use, and relied on Plaintiff's subjective reports of symptoms in reaching his conclusions. A careful reading of the record does not support these assertions. Though not accompanied by treatment records, the four page, single spaced letter set out a detailed explication of Plaintiff's impairments and limitations, and demonstrated a thorough medical assessment of his condition. While Harrington may not have been a treating source, Dr. Chandragiri clearly was. Whether or not Dr. Chandragiri and Harrington were "fully familiar" with Plaintiff's drug use, their letter

FINDINGS AND RECOMMENDATION - 12

reflects a thorough familiarity with Plaintiff's condition when he was not using drugs, and the conclusion that Plaintiff was too impaired to work even if he were not using drugs was fully supported. There is no basis for concluding that Dr. Chandragiri erroneously relied on Plaintiff's own subjective reports concerning his symptoms, and failed to understand how Plaintiff's drug use affected his impairments, given that the ALJ herself concluded that Plaintiff's mental impairments precluded full-time gainful work activity even when Plaintiff was sober. Any asserted failure to fully understand how much Plaintiff improved during periods when he was not using drugs is irrelevant in light of the ALJ's fully supported conclusion that he continued to be disabled after his drug abuse ceased.

When an ALJ provides inadequate reasons for rejecting the opinion of a treating physician, that opinion is credited as a matter of law. Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995). A reviewing court then has discretion to remand the action for further proceedings or for a finding of disability and an award of benefits. See, e.g, Stone v. Heckler, 761 F.2d 530, 533 (9th Cir. 1985). Whether an action is remanded for an award of benefits or for further proceedings depends on the likely utility of additional proceedings. Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir. 2000). A reviewing court should credit the evidence and remand for a finding of disability and an award of benefits if: 1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; 2) there are no outstanding issues to be resolved before a determination of disability can be made; and 3) it is clear from the record that the ALJ would be required to find the claimant disabled if the evidence in question were credited. Smolen v. Chater, 80 F.3d 1273, 1292 (9th Cir. 1996).

Here, the ALJ did not provide legally adequate reasons for rejecting the opinions of Plaintiff's treating physicians concerning the severity of Plaintiff's impairments between the

FINDINGS AND RECOMMENDATION - 13

alleged date of the onset of Plaintiff's disability and November 25, 2008, the date from which the ALJ concluded that Plaintiff's drug use was not material to a finding of disability. There are no outstanding issues to be resolved before a determination of disability can be made, and it is clear that the ALJ would have been required to find Plaintiff disabled during the period at issue if she had credited these opinions. Under these circumstances, remand for an award of benefits during the period in question is appropriate.

## Conclusion

A judgment should be entered reversing in part the decision of the Commissioner and remanding the action to the Agency for an award of benefits from November 7, 2005 through November 25, 2008.

## Scheduling Order

This Findings and Recommendation will be referred to a district judge. Objections, if any, are due May 21, 2012. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 3rd day May, 2012.

        /s/ John Jelderks
        John Jelderks
        U.S. Magistrate Judge